# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNETTE DORSEY<br>Plaintiff | : <br> : <br> : | No. 3:18-cv-01964(VLB) |
| v. | : <br> : | |
| ANDREW SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY<br>    Defendant. | : <br> : <br> : <br> : <br> : <br> : | March 19, 2020 |

## MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION TO REMAND [13] AND DENYING THE COMMISSIONER'S MOTION TO AFFIRM [14]

Annette C. Dorsey ("Ms. Dorsey" or the "Claimant" or the "Plaintiff") challenges the Commissioner of Social Security, now Andrew Saul's,[1] final decision to deny her Supplemental Security Income benefits. [Dkt. 13 (Pl. Mot. to Remand)]. Ms. Dorsey moves to reverse and remand the Commissioner's decision and argues that the administrative law judge's ("ALJ") findings are not supported by substantial evidence in the record and not rendered in accordance with law. Defendant Andrew Saul, now Commissioner of Social Security (the "Defendant" or "Commissioner") moves to affirm the ALJ's decision. [Dkt. 14 (Def. Mot. to Affirm)]. The Court GRANTS Plaintiff's motion to remand and DENIES the Commissioner's motion to affirm.

---

[1] Andrew Saul, current Commissioner of the Social Security Administration, is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

## Procedural Background

Ms. Dorsey was born in 1967 [Dkt. 7 at 26][2] and last worked as a home health aide and cashier. [R. 25].

Ms. Dorsey first filed for Title XVI supplemental security income on March 12, 2012. [R. 1]. Her first claim was denied by an ALJ on January 31, 2014. [R. 1; 12; 82]. Ms. Dorsey filed a new claim on April 10, 2014, alleging a disability onset date of February 1, 2014, the day after the previous ALJ's decision. [R. 12]. As the ALJ recognized here, this is permissible under social security regulations, but the Claimant may not reopen the previously finalized decision. [*Ibid.*]; *see also* 20 C.F.R. § 416.1457(c)(1) (providing for administrative *res judicata* in SSI cases).

The second claim was denied on August 7, 2015 and again on reconsideration on June 29, 2016. [R. 11]. Ms. Dorsey then requested a hearing, which was held before ALJ Ronald J. Thomas in New Haven, Connecticut on September 25, 2017. [*Ibid.*]. Ms. Dorsey testified and was represented by Attorney Olia Yelner. [*Ibid.*]. Vocational expert Robert T. Paterwic also testified. [*Ibid.*]. In a written decision dated October 26, 2017, the ALJ found that Ms. Dorsey was not under a disability as defined by the Social Security Act. [R. 11-27].

As discussed, *infra*, the Social Security Administration uses a five-part sequential evaluation process for determining whether an individual is disabled

---

[2] Citations to the record, [Dkt. 7], are identified as [R. ___]. The ALJ's opinion comprises [R. 11-27]. The transcript of the September 25, 2017 hearing before ALJ Thomas comprises [R. 48-78].

within the meaning of the Social Security Act. 20 CFR 416.920. The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2014, and some, but not all, of her conditions constituted severe impairments. [R. 14-16]. The ALJ found that Plaintiff's conditions do not render her disabled *per se* at Step Three. [R. 16-19]. On Step Four, the ALJ found that Ms. Dorsey's functional limitations precluded her from performing her past relevant work as a home health aide or cashier. [R. 19-26]. The vocational expert testified as to jobs existing in significant numbers in the national economy that Ms. Dorsey could still perform within her functional limitations. [R. 73-74]. The ALJ agreed and found that Ms. Dorsey could perform work as a small parts assembler or light janitorial work. [R. 26-27]. Therefore, disability benefits were denied. [R. 27].

The Appeals Council of the Social Security Administration denied Ms. Dorsey's request for review on October 31, 2018. [R. 1-3]. A timely petition for judicial review pursuant to 42 U.S.C. § 405(g) followed.

### Relevant Medical History

Plaintiff and Defendant both filed respective statements of material facts pursuant to the Court's Standing Scheduling Order in Social Security cases [Dkt. 5, rev. 11/15/2018)] contemporaneous with their motions to remand and affirm the Commissioner's decision. [Dkt. 13-2 (Mem. in Sup. Pl. Mot. to Remand.) Ex. 2]; [Dkt. 14-2 (Mem. in Supp. Def. Mot. to Affirm) Ex. 2]. The medical record reflects that Claimant suffers from, *inter alia*, obesity, orthopedic and rheumatological issues,

respiratory issues, bi-polar disorder, depression, anxiety, a history of drug dependence, and multi-site pain. [*Id.*]

At the time of her hearing before the ALJ, she had resided in transitional housing for over two and half years. [R. 51]. As the ALJ noted, transitional housing is "designed to transition a person from a homeless individual to a responsible individual capable of achieving self-support." [R. 19].

The Court will address Ms. Dorsey's medical history only as it relates to issues raised by the parties.

## Discussion

A. <u>Standard of Review</u>

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). Thus, a "district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g)). "Substantial evidence, in a social security disability benefits case, is more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28 (2d Cir. 2004). In reviewing the Commissioner's decision, "[a district court] must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality

4

of the evidence must also include that which detracts from its weight." *Petrie v. Astrue*, 412 F. App'x 401, 403–04 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)) (internal quotation marks omitted).

"Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position." *Santiago v. Colvin*, No. 3:14-CV-1956 (MPS), 2016 WL 777905, at *2 (D. Conn. Feb. 29, 2016). The ALJ need not reconcile "every conflicting shred of medical testimony… it is sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). Legal error alone is enough, however, to overturn the ALJ's decision, even if the ALJ's decision is supported by substantial evidence. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *Shaw*, 221 F.3d at 131; *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

B. <u>Summary of issues</u>

Plaintiff raises two arguments, both addressing Step Four of the sequential analysis. First, she argues that the ALJ made improper weight assignments to the medical opinions of her treating psychiatrist, Dr. Kenneth Graham. [Dkt. 13 (Pl. Mem. in Supp. Mot. to Rev.) at 7-10]. Plaintiff argues that Dr. Graham was a specialist in psychiatry, her long-time treating provider, and his opinion is well supported by the medical evidence. [*Ibid*].

Then, Plaintiff argues that the ALJ should have further limited her Residual Functional Capacity to include the following restrictions: a sit/stand option and

less than light exertion because of her neck and back pain [*Id.* at 10-16], limited the use of her hands because of neuropathy [*Id.* at 16], limiting her to no exposure to pulmonary irritants because of her COPD [*Id.* at 17], and that she would be off-task or chronically absent because of her psychological impairments [*Id.* at 17-20].

In response, the Commissioner argues that Dr. Graham's opinions partially conflict with his treating notes [Dkt. 14 (Def. Mem. in Supp. Mot. to Affirm) at 11-14], other medical evidence of record [*Ibid.*], and Plaintiff's daily activities [*Id.* at 13]. Regarding Plaintiff's physical conditions, the ALJ relied on treating records which showed: Plaintiff's COPD, musculoskeletal complaints, and neuropathy were not debilitating and were managed with conservative treatment. [*Id.* at 3-8]. The ALJ also considered the scope of Plaintiff's daily activities [*Id.* at 8-11], Dr. Michael Smith's opinion [*Id.* at 10-11], and the opinions of the state agency's consulting physicians [*Id.* at 7-8] in determining her RFC.

C. Legal Standard for Disability

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). To be "disabled" under the statute, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner:

**(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)["Step One"]**

**(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.) ["Step Two"]**

**(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.) ["Step Three"]**

**(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this section and § 416.960(b). ["Step Four"]**

**(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See paragraphs (g) and (h) of this section and § 416.960(c). ["Step Five"]**

20 C.F.R. § 416.920.

Ms. Dorsey's arguments address Step Four, concerning both the determination and scope of Ms. Dorsey's Residual Functional Capacity

### a. The Residual Functional Capacity

Residual functional capacity ("RFC") is "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily,

7

RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *2).

An ALJ must consider both a claimant's severe impairments and non-severe impairments in determining her RFC. 20 C.F.R. § 416.945(a)(2); *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984).

### b. Treating Physicians Rule

One particularly significant source of medical information considered in determining a claimant's RFC is her treating physicians' opinions.[3] "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also *Mariani v. Colvin,* 567 F. App'x 8, 10 (2d Cir. 2014) (holding that "[a] treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician"). "The regulations further provide that even if controlling weight is not given to the

---

[3] The treating physician rule for SSI claims, 20 C.F.R. § 416.927 was amended, effective March 27, 2017. The Court, therefore, applies the regulation in effect between August 24, 2012 to March 26, 2017.

opinions of the treating physician, the ALJ may still assign some weight to those views and must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue,* 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing *Schupp v. Barnhart*, No. Civ. 3:02CV103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contained conflicting opinions on the same medical condition." *Pavia v. Colvin,* No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at 4 (W.D.N.Y. Aug. 4, 2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical opinion, the ALJ must consider all of the following: the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. 20 C.F.R. § 416.927(c)(1)-(6)

    c. <u>Application of the Treating Physician Rule</u>

The Court finds that the ALJ did not adequately explain his decision to place less-than-controlling weight on Dr. Graham's two opinions.

Dr. Graham's treating notes reflect that Ms. Dorsey underwent a diagnostic evaluation with Kathleen Treacy, LCSW on June 2, 2015 [R. 843-47] and had an initial visit with Dr. Graham later that month [R. 848-49]. In August 2015, her depression worsened. [R. 854]. Dr. Graham evaluated her depression as moderate to severe, noting that she had poor sleep despite the maximum dose of Remeron, loss of pleasure, decreased functioning ability, and no ability to cope with daily

9

activities. [R. 854]. Her depression improved in September 2015 [R. 856], worsened again in October [R. 858], then improved again at both follows-ups in November [R. 860; R. 908-09]. In January 2016, she reported periodic panic attacks and social phobia but no decrease in functioning ability. [R. 904].

Dr. Graham continued to treat Ms. Dorsey on a monthly basis through September 2017. [R.1049-85]. Dr. Graham's treatment notes reflect that Ms. Dorsey was maintaining her sobriety and that her depression progressively improved but her anxiety occasionally worsened. *See e.g.* [R. 1049 (05/05/2016), depression mild]; [R. 1051 (06/02/2016), panic attacks of unknown origin]; [R. 1055 (07/25/2016), anxiety with persistent worry, denies depression symptoms]. In December 2016, Dr. Graham indicated that her depression was mild to moderate and that she was poorly organized and not goal directed. [R. 1065]. The next month, he described her depression as "[m]inimal episodes from time to time" and "no inability to cope with daily activities." [R. 1067]. Her panic attacks increased in frequency in March 2017, but she had the ability to cope with daily activities. [R. 1071]. Her anxiety decreased the following month and her depression was "minimal". [R. 1073]. The following month (May 2017), her "problem list" was reviewed, which described her condition as "[a]nxiety [m]ild to moderate agoraphobia" and occasional unprovoked depressive episodes that last 1-2 days, but no decreased functioning ability or an inability to cope. [R. 1075]. Her condition appears to have improved the following month. [R.1077]. None of Dr. Graham's treatment notes show cognitive decline or abnormal neurological findings.

Dr. Graham's November 2015 opinion [R. 864-68] states that he has been treating Ms. Dorsey monthly since June 2016 for an unspecified depressive disorder. [R. 864]. He opined that she does "very well" when she is abstinent from substance use, that her substance abuse was in remission, and that she was compliant with her medications. [R. 864]. Her insight and judgment were fair, but she had trouble with recent memory, attention, and concentration. [R. 865]. Dr. Graham opined that her depression impairs her coping skills and frustration tolerance. [R. 866]. Dr. Graham also opined that her depression impairs her ability to carry out instructions. [R. 867].

Dr. Graham provided a second opinion on Ms. Dorsey's mental capabilities on July 3, 2017. [R. 1079-81]. In this opinion, he rated her mental aptitude as "unlimited or very good," but that she had poor or no ability to carry out or remember detailed instruction or deal with work stress. [R. 1079-81]. Dr. Graham opined that she could not maintain attention for a two hour segment or complete a normal workday without interruption from psychologically based symptoms and would be out from work more than twice per month. [R. 1079, 1081].

The ALJ gave partial weight to Dr. Graham's 2015 mental impairment questionnaire. [R. 24]. The ALJ accepted that Ms. Dorsey has some limitations concerning handling frustrations appropriately and using appropriate coping skills. [*Ibid.*]. The ALJ did not accept Dr. Graham's opinion that Ms. Dorsey had frequent trouble concentrating or focusing long enough to complete simple tasks and persist without interruption. [*Ibid.*]. The ALJ cited Dr. Graham's August 2017 and September 2017 treatment notes showing mild to moderate depression and

11

mild anxiety causing difficulty with her organizational skills, but still capable of coping with most activities of daily living. [*Ibid.*] (citing to R. 1084 (08/10/2017) and R. 1082 (09/07/2017).

The ALJ placed minimal weight on Dr. Graham's 2017 opinion. [R. 24]. The ALJ did not accept that Ms. Dorsey has fair limitations with understanding remembering and carrying out simple instructions. [*Ibid.*]. The ALJ did not address any of Dr. Graham's other conclusions contained therein. [*Ibid.*] The ALJ cites the same August and September 2017 treatment notes as contradicting both Dr. Graham's July 2017 assessment and his November 2015 assessment. [R. 24].

In *Estrella v. Berryhill*, 925 F.3d 90, 95-98 (2d Cir. 2019), the Second Circuit held that an ALJ's failure to explicitly apply all of the *Burgess* factors (20 C.F.R. § 404.1527(c) and 416.927(c)) when assigning less than controlling weight to a treating source's opinion is a procedural error. *Id.* (citing *Selian v. Asture*, 708 F.3d 409, 418 (2d Cir. 2013)(per curiam)). Here, the ALJ did not explicitly consider the frequency and length of the treating relationship, the nature and extent of the treating relationship, or Dr. Graham's specialization in psychiatry. Therefore, the ALJ committed a legal error.

Because the ALJ procedurally erred, the question becomes whether "a searching review of the record ... assure[s us] ... that the substance of the ... rule was not traversed"—i.e., whether the record otherwise provides "good reasons" for assigning "little weight" to the opinion." *Id*. at 96. If the "Commissioner has not

[otherwise] provided 'good reasons' for [the] weight assignment," the appropriate remedy is remand for the ALJ to "comprehensively set forth [his] reasons." *Id*.

As in *Estrella*, the Court cannot conclude that the ALJ "otherwise provided good reasons" when the ALJ failed to consider the cyclical nature of Claimant's mental health condition by failing to reconcile her longitudinal treatment history. *Id.* at 97.

"Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Ibid.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). The ALJ did not compare Dr. Graham's two opinions to show how Ms. Dorsey's condition changed over the course of treatment. [R. 24].

Instead, the ALJ relied on the same two records for monthly appointments occurring after Dr. Graham authored his last opinion as the basis for discounting both of his opinions, notwithstanding diagnostic differences contained therein. [R. 24]. The last treatment note cited by the ALJ actually shows a medication increase. [R. 1082]. Had the ALJ compared the two opinions, he would have noted that Dr. Graham reached a different diagnosis after two years of additional treatment and observation. *Compare* [R. 864 (Nov. 2015, unspecified depressive disorder)] to [R. 1080 (Jul. 2017, unspecified bipolar disorder)].

13

The ALJ addresses a diagnostic change in his discussion of Ms. Dorsey's treatment history [R.22], but it is not the diagnostic change reflected in Dr. Graham's two medical opinions. The ALJ's opinion states that "[g]iven her improved mental state, Dr. Graham adjusted the claimant's diagnosis by removing posttraumatic stress disorder and adding unspecified bipolar disorder (Exhibit B22F, pg. 1)[R.1082-83]." [R.22]. The causal connection suggested by the ALJ is absent from the medical record.

Nor does the ALJ address the frequency of changes in her psychoactive medications. *See* [R. 22, discussing medication changes after her job loss in 2015] *but see also* [R. 1071 (03/16/2017), changing Abilify dose following increase in frequency of panic attacks]; [R. 854, (08/25/2015), multiple medication changes]; [R. 860, (11/02/15) medication changes before part-time job loss)]; [R. 1082 (09/07/2017), medication increase].

More importantly, the ALJ does not address the frequency of Claimant's meetings with Dr. Graham, which occurred on a monthly basis over two years. The premise behind weighing the length and frequency of the treating relationship is that a treating source will have obtained a longitudinal picture of the claimant's impairment with enough visits over a long enough period of time. 416 C.F.R. 927(c)(2). In a recent summary order, the Second Circuit remanded a case where the ALJ failed to expressly consider the frequency of treatment consisting of twenty meetings with a psychologist over roughly two years. *Ferraro v. Saul*, No. 18-3684, 2020 WL 1189399, at *2 (2d Cir. Mar. 12, 2020)("But merely acknowledging the existence of treatment relationships is not the same as explicitly considering

14

"the frequency, length, nature, and extent of treatment." This is particularly true where, as here, the relationships involved dozens of appointments over nearly two years, and the doctors worked continuously with the patient to develop and monitor the success of various treatment plans.").

The Defendant cites several progress notes showing that during most sessions with Dr. Graham, Ms. Dorsey expressed normal enjoyment of activities, that she did not have an inability to cope with daily activities, and her normal functional ability did not decrease. [Dkt. 14 (Def. Mem. in Supp. Mot. to Affirm) at 12](citing R. 18 (Step Three determination); also citing R. 852; 860; 867 1051; 1053; 1055; 1057; 1059; 1061; 1063; 1065; 1067; 1069; 1071; 1073; 1075]. The Defendant also cites Ms. Treacy's initial diagnostic examination [R. 843-47] indicating that she is functioning independently and Dr. Schwartzman's August 2015 physical examination note observing normal psychiatric and neurological signs (R. 818).

The Court agrees that these medical records show that Plaintiff's psychiatric conditions were non-severe. These records were considered by the ALJ at Step Three to determine whether Plaintiff was disabled *per se*. *Compare* [R. 18] to [R. 24]. These records do not necessarily contradict Dr. Graham's opinion that Plaintiff would be absent from work "twice or more per month," given the cyclical nature of her condition. Shortly before rendering his July 2017 opinion, Dr. Graham had previously observed that she has "occasional unprovoked episodes that last 1-2 days." [R. 1075 (05/18/2017)]. The ALJ does not cite any treating or consulting providers opinion or any medical evidence suggesting that Plaintiff would not be chronically absent.

15

Non-medical evidence also supports Dr. Graham's opinion that Claimant would be out of work for two days or more per month. Claimant worked briefly as a retail cashier for two weeks in 2016 but was terminated for absenteeism related to her depression and anxiety. [R. 64-65].

The Court also notes that the ALJ also relied, in part, on his assessment of Claimant's mental health at the hearing:

> The undersigned observed that the claimant did not appear depressed, but was neat, clean, very polite, respectful, very relaxed and pleasant. The claimant presented coherent logical speech, with good cognition, attentive, and well-focused, with no evidence of thought disorder. The claimant was alert, orientated times three with good concentration, able to follow the flow of questioning, and understand and respond satisfactorily to all questions posed to her.

[R. 23]

Although social security regulations permit the consideration of an ALJ's observations in evaluating the credibility of symptomology, typically in the context of a physical disability, it should be assigned only limited weight. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). The Second Circuit and other courts have criticized the "sit and squirm" index in physical disability cases. *See Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir. 1981)(footnotes omitted)("This finding also raises serious questions with respect to the propriety of subjecting claimants to a "sit and squirm index," and with respect to rendition by the ALJ of an expert medical opinion which is beyond his competence.").

"This practice is particularly troubling in the mental health context, where the SSA recognizes the "[n]eed for longitudinal evidence," because mental

disabilities "are best diagnosed over time." *Henley v. Berryhill*, No. 17-CV-445-FPG, 2018 WL 3866670, at *5 (W.D.N.Y. Aug. 15, 2018)(internal citations omitted).

Here, the ALJ rendered an opinion on her psychological state that he was unqualified to make based on his lay observations during a 46 minute hearing [R. 48-78]. Moreover, Ms. Dorsey did not claim that she suffered from a thought disorder during the relevant time and her treatment notes repeatedly address the episodic and cyclical nature of her depression, anxiety, and/or bipolar disorder.[4] At most, the ALJ's observation shows that Ms. Dorsey was not exhibiting obvious symptoms of psychiatric distress and was respectful of the proceeding.

Although the ALJ "emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the consistency of the claimant's allegations with the overall medical record and the claimant's residual functional capacity," [R. 23] the ALJ did not expressly state the weight that he placed on his own observation. The observation itself is not supported by substantial evidence.

The Defendant cites the Second Circuit's summary order in *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) for support of its position that the ALJ properly weighed Dr. Graham's medical opinions in light of contradictory treatment records and the Claimant's daily activities in determining her RFC. [Dkt. 14 (Def. Mem. in Supp. Mot. to Affirm) 4, 8, 11]. However, *Monroe* is distinguishable in several respects. First, the ALJ in *Monroe* found that the treating physician's

---

[4] The formal only cognitive testing performed shows that Ms. Dorsey has borderline to low average IQ. [R. 369-372 (09/07/2013, F. Scott Winstanley, Pd.D. Psychological Report)]. She has a history of auditory hallucinations (see R. 370).

17

opinion itself was internally inconsistent. *Monroe*, 676 F. App'x at 7. The treatment notes in *Monroe* reflected that, on at least one occasion, the claimant stated that she "loved life." *Id.* at 8.

Second, in *Monroe*, the ALJ found that the Claimant "engaged in a range of recreational activities around the same time, including snowmobiling trips to Ontario and Quebec, horseback riding, four-wheeling, and multiple vacation cruises." *Ibid.* By contrast, here, the ALJ's Step Four analysis did not engage in the type of activity-specific analysis that showed a contradiction between her reported activities and the treating provider's opinion. [R.24]. Instead, at Step Four, the ALJ overly relied on his own lay opinion about her mental health from her appearance at the hearing and her ability to remain sober despite personal hardship. [R. 23]. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("In analyzing a treating physician's report, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. A circumstantial critique by a non-physician, however thorough or responsible, must be overwhelmingly compelling to justify a denial of benefits") (internal citations and quotations omitted).

Social Security guidance suggests that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p (citing See 20 CFR 404.1529(c) and 416.929(c)]. Here, the ALJ reached the opposite conclusion. Plaintiff's utilization of mental health resources and compliance with treatment

18

should not have been construed as reflecting a greater capacity for work. Ms. Dorsey's testimony also showed that she also relied on van transportation provided by the transitional home to attend medical appointments. The nature and extent of her reliance was not fully developed and thus not fully considered by the ALJ in his conclusion that she could attend medical appointments independently. [R. 18]; [R. 67-68].

In light of these shortcomings, the Court cannot conclude that the "substance of the treating physician rule was not traversed." *Estrella*, 925 F. 3d at 96. A violation of the treating physician rule is harmless where "application of the correct legal standard could lead to only one conclusion" and there is "no reasonable likelihood" that full compliance with the rule would change the ALJ's determination." *Poudrier v. Berryhill*, No. 3:18-CV-01384 (MPS), 2020 WL 1080446, at *5 (D. Conn. Mar. 6, 2020) (*citing Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)).

Here, the error was not harmless because the ALJ did not incorporate Dr. Graham's opinion that Plaintiff would be chronically absent, more than twice per month. See [R. 19 (ALJ's RFC determination)]; [R. 1081 (Jul. 2017 opinion)]. The RFC includes limitations for simple repetitious tasks and only occasional interaction with the public, co-workers or supervisor. [R. 19]. These limitations do not address the medical evidence showing that her psychiatric episodes were unprovoked [R. 1075].

The vocational expert testified that "recent review of industry standard allow-an employer would allow (sic) up to one excused absence per month….. you

19

have more than one excused absence per month, then that would not be tolerated by an employer (sic)." [R.76].

Accordingly, remand is necessary for further administrative proceedings consistent with this ruling. The Court does not reach the merits of Plaintiff's arguments concerning her physical impairments "because upon remand and after a de novo hearing, [the ALJ] shall review this matter in its entirety." *Poudrier*, 2020 WL 1080446, at *5 (quoting *Delgado v. Berryhill*, No. 3:17CV54(JCH), 2018 WL 1316198, at *15 (D. Conn. Mar. 14, 2018).

## Conclusion

For the reasons set forth above, the Court GRANTS Plaintiff's motion to remand [Dkt. 13] and DENIES Defendant's motion to affirm [Dkt. 14]. The Clerk is directed to close this matter.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: March 19, 2020